# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2732-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Christopher S. Carson, Attorney at Law: Office of Lawyer Regulation, Complainant, v. Christopher S. Carson, Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST CARSON

| | |
|---|---|
| OPINION FILED: | March 10, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

**2015 WI 26**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2014AP2732-D

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Christopher S. Carson, Attorney at Law:**

**Office of Lawyer Regulation,**

**FILED**

          **Complainant,**

**MAR 10, 2015**

     **v.**

Diane M. Fremgen
Clerk of Supreme Court

**Christopher S. Carson,**

          **Respondent.**

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   We review a stipulation filed pursuant to Supreme Court Rule (SCR) 22.12 by the Office of Lawyer Regulation (OLR) and Attorney Christopher S. Carson.   In the stipulation, Attorney Carson agrees that he engaged in eight counts of misconduct involving four clients.   Attorney Carson also agrees that a 90-day suspension of his license to practice law in Wisconsin is an appropriate sanction for his misconduct.

The OLR does not request restitution, and it also does not seek the imposition of costs against Attorney Carson.

¶2 After careful review of the matter, we approve the stipulation and agree that a 90-day suspension of Attorney Carson's license to practice law is an appropriate sanction. Because this matter is being resolved without the appointment of a referee, we do not impose any costs on Attorney Carson.

¶3 Attorney Carson was admitted to practice law in Wisconsin in 1992. The most recent address furnished by Attorney Carson to the State Bar of Wisconsin is New Berlin, Wisconsin.

¶4 In 2008, Attorney Carson was privately reprimanded for misconduct in two matters. In one matter, he wrote to a judge without copying the other lawyers. In the second matter, he failed to obey a court order. Private Reprimand 2008-15.

¶5 In 2009, Attorney Carson was publicly reprimanded for misconduct in a divorce matter. Public Reprimand of Christopher S. Carson, No. 2009-10.

¶6 On November 26, 2014, the OLR filed a complaint alleging that Attorney Carson engaged in eight counts of misconduct involving four separate clients. The OLR and Attorney Carson contemporaneously filed a stipulation incorporating the allegations of the complaint.

¶7 The first client matter detailed in the complaint and stipulation involved Attorney Carson's representation of N.S. In or around April of 2010, N.S. retained Attorney Carson to represent her in two operating while intoxicated cases and a

forthcoming felony drug possession case. Prior to commencement of the lawyer-client relationship, no consensual sexual relationship existed between N.S. and Attorney Carson.

¶8 N.S.'s initial court appearance in the drug possession case occurred in August of 2010. N.S. and Attorney Carson both attended the court appearance. The court set a signature bail bond which provided that N.S. was not to possess or consume any alcohol or drugs. The drug possession case was concluded in late May of 2011. The terms of the August 2010 bail bond remained in effect.

¶9 In April of 2011, Attorney Carson and N.S. engaged in sexual relations on two occasions.

¶10 The OLR's complaint alleged three counts of misconduct with respect to Attorney Carson's relationship with N.S.:

> [COUNT ONE] By purchasing two alcoholic drinks for N.S. on April 23, 2011, when the bail bond that N.S. signed on August 11, 2010, in Carson's presence prohibited her from consuming alcohol, and while the conditions of the bail bond were still in effect, Carson violated SCR 20:1.2(d).[1]

> [COUNT TWO] By engaging in sexual relations with N.S., a current client, on April 23 and 24, 2011, while he was representing her on criminal charges,

---

[1] SCR 20:1.2(d) provides:

> A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

when a consensual sexual relationship did not exist between them when the lawyer-client relationship commenced, Carson violated SCR 20:1.8(j).[2]

[COUNT THREE] By denying to OLR's District Committee that he purchased clothing for N.S. during their trip on April 23, 2011, and by stating to OLR's District Committee that it was impossible for him to have looked through a back window at N.S.'s home and observe her and her boyfriend in the living room on April 24, 2011, because there was no such window, and it would have been impossible for him to see into the living room from the back porch, when one or both of such statements were misrepresentations, Carson violated SCR 22.03(6)[3] and SCR 22.04(1).[4]

¶11 The second client matter detailed in the complaint and stipulation involved Attorney Carson's representation of M.G. In 2005, M.G. was sentenced to 13 years of prison for repeated first degree sexual assault of a child. The judgment of conviction ordered M.G. to have no contact with minor children unless approved by his offender agent.

---

[2] SCR 20:1.8(j) provides, in relevant part, that "[a] lawyer shall not have sexual relations with a current client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced."

[3] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[4] SCR 22.04(1) provides that "[t]he director may refer a matter to a district committee for assistance in the investigation. A respondent has the duty to cooperate specified in SCR 21.15(4) and 22.03(2) in respect to the district committee. The committee may subpoena and compel the production of documents specified in SCR 22.03(8) and 22.42."

¶12 M.G. and his wife wanted M.G. to have visitation with their recently born daughter during his incarceration. They sought permission for visits from M.G.'s social worker and agent. Their requests were denied. They sought review of the denial from the warden, who upheld the denial, subject to reconsideration upon successful completion of treatment programs.

¶13 In September of 2005, three weeks before the warden sustained the denial of visitation, the circuit court amended the judgment of conviction to permit M.G. to have supervised and monitored prison visits with his daughter. However, the amended judgment did not strike the pre-existing order prohibiting contact with minor children without the approval of M.G.'s agent.

¶14 Visitation was further denied to M.G. by prison officials later in 2005 and again in 2006 and 2007. In each of those instances, M.G. and/or his wife were informed of their appeal rights.

¶15 Wisconsin Admin. Code § DOC 310 provides the administrative remedy framework for review of inmate complaints, the Inmate Complaint Review System (ICRS). Under the ICRS, inmate complaints are first processed by the institution complaint examiner, who makes disposition recommendations to the reviewing authority. An inmate dissatisfied with the reviewing authority's decision generally may appeal it. The appeal is initially reviewed by a corrections complaint examiner, who recommends a decision to the secretary of the Department of

Corrections (DOC). The secretary's decision is final. M.G. never used the ICRS to contest any denials of visitation in prison with his daughter. He never appealed under the ICRS any denials of visitation to the secretary of the DOC. In addition, M.G. failed to exhaust his administrative remedies with the DOC for each of the denials of visitation.

¶16 In early 2009, M.G.'s wife retained Attorney Carson to take legal action seeking to permit M.G. to have prison visitation with his daughter. M.G.'s wife provided Attorney Carson with a copy of M.G.'s prison case notes, which state that there is an appeal process. Attorney Carson never independently investigated whether M.G. exhausted his administrative remedies regarding prior denials of visitation with his daughter.

¶17 M.G. filed three separate motions for writ of mandamus in the criminal case seeking to compel the DOC to permit visitation. Each of the motions were eventually withdrawn.

¶18 The OLR's complaint alleged the following count of misconduct with respect to Attorney Carson's handling of M.G.'s case:

> [COUNT FOUR] After being hired to represent an incarcerated man who had unsuccessfully sought prison visitation with his minor child, and after being provided with "prison case notes" stating that an appeals process had been explained to the man and that notice of appeal rights had been sent to the man's wife, by failing to obtain information about the administrative appeal process within the Department of Corrections or familiarize himself on the relevant law and codes on the appeal process; and/or by thereafter seeking visitation rights by filing a series of three motions in the client's prior criminal case instead of first exhausting the client's administrative remedies

6

and by failing to file a motion against the State of Wisconsin in the proper venue, Carson violated SCR 20:1.1.[5]

¶19 The third client matter detailed in the complaint and stipulation involved Attorney Carson's representation of L.W., who was sentenced in Milwaukee County circuit court to 42 months in prison, followed by 42 months of extended supervision, following his conviction for possession with intent to deliver THC. On July 20, 2010, while on extended supervision, L.W.'s extended supervision was revoked by the DOC for two counts of sex with a child and one count of failing to report to his agent, all of which occurred in 2009.

¶20 Two days later, L.W. was convicted in Milwaukee County circuit court for two counts of second degree sexual assault of a child and one count of child enticement. The child involved was the same child that was the subject of L.W.'s extended supervision revocation. On the new conviction, L.W. was sentenced to nine years in prison, followed by seven years of extended supervision.

¶21 In late 2011 or early 2012, L.W. retained Attorney Carson to challenge the 2010 revocation of his extended supervision from the 2002 drug case, on the basis that L.W. received ineffective assistance of counsel at the extended supervision revocation hearing. The time to file a petition for

---

[5] SCR 20:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

writ of certiari from the extended supervision revocation had expired in 2010, so Attorney Carson filed a petition for writ of habeas corpus in Milwaukee County circuit court. Wisconsin Stat. § 801.50(4)(b) requires that a petition for writ of habeas corpus be filed in the county "[w]here the liberty of the plaintiff is restrained if the action seeks relief concerning any other matter relating to a restraint on the liberty of the plaintiff." At the time Attorney Carson filed the habeas petition, L.W. was incarcerated at Redgranite Correctional Institution (RGCI), which is located in Waushara County.

¶22 Wisconsin Stat. § 782.04(1) provides that a habeas petition must state "the person by whom imprisoned and the place where, naming both parties, if their names are known, or describing them if they are not." Attorney Carson failed to name the warden at RGCI in the petition. Wisconsin Stat. § 782.10 requires that a habeas petition be served upon the warden or left with an underofficer at the institution that has charge of the inmate. Attorney Carson only mailed the petition to the warden. Wisconsin Stat. § 782.04 requires that a habeas petition be verified. The petition filed by Attorney Carson was not verified.

¶23 In the conclusion of the habeas petition, Attorney Carson requested "the remedy of immediate release." However, if the writ was granted, the remedy would be a new hearing on L.W.'s ineffective assistance claim, not release. In addition, at the time the petition was filed, L.W. was less than two years into a nine-year prison sentence for the sexual assault of a

8

child conviction, so no action of the circuit court on the habeas petition could have resulted in release from incarceration.

¶24 The assistant legal counsel for the DOC filed a motion to dismiss the petition and to declare a "strike" against L.W. under the Prisoner Litigation Reform Act. The assistant legal counsel filed a separate motion for sanctions against Attorney Carson, seeking a finding that the habeas petition was frivolous and seeking an award of actual attorneys fees. Attorney Carson voluntarily dismissed the habeas petition, and the DOC's assistant legal counsel agreed to dismiss her motions to dismiss and for sanctions.

¶25 In February of 2012, Attorney Carson filed a new petition for writ of habeas corpus in Waushara County circuit court. The DOC's assistant legal counsel filed a motion to dismiss the second petition and to declare a "strike" against L.W. under the Prisoner Litigation Reform Act. The assistant legal counsel filed a separate motion for sanctions against Attorney Carson, again seeking a finding that the second habeas petition was frivolous and seeking an award of actual attorneys fees.

¶26 Attorney Carson thereafter filed his own motion for sanctions against the DOC's assistant legal counsel. The second habeas petition and the sanction motions were heard in April of 2012. The circuit court denied the second habeas petition and set the matter for additional briefing and a continued hearing as to the sanctions motions. In May of 2012, Attorney Carson

withdrew his motion for sanctions against the DOC's assistant legal counsel. The hearing continued in September of 2012. At the close of the hearing, the circuit court concluded that the second habeas petition was frivolous. The parties exchanged fee submissions and at an October 2012 hearing, the circuit court ordered Attorney Carson to pay attorneys fees and costs totaling $1,788.50. Attorney Carson appealed, and the court of appeals summarily affirmed and remanded for the determination and assessment against Attorney Carson of attorneys fees and costs reasonably incurred by the State in the appeal.

¶27 The OLR's complaint alleged the following count of misconduct with respect to Attorney Carson's handling of L.W.'s case:

> [COUNT FIVE] By making multiple errors in a petition for a writ of habeas corpus that he filed in Milwaukee County Circuit Court on January 3, 2012, including filing the petition in the wrong county, failing to verify the petition by signing it under oath, misstating the number of charges of which his client had been convicted, and seeking an inappropriate remedy, eventually dismissing the petition and filing a revised petition in Waushara County in which he corrected some, but not all, of his previous errors, Carson violated SCR 20:1.1.

¶28 The final client matter detailed in the complaint and stipulation involved Attorney Carson's representation of A.E. A.E. met with Attorney Carson in July of 2010 for a consultation regarding possible divorce representation. At the conclusion of the consultation, A.E. gave Attorney Carson a $700 advanced fee, but instructed him not to use the funds and to take no further action on her behalf unless her husband filed for a divorce.

Attorney Carson did not deposit the $700 into his office trust account but rather deposited it into his office business account. Attorney Carson later told an OLR investigator that he deposited the $700 advanced fee into his office business account because it was a flat fee for representation of A.E. in an uncontested divorce. Attorney Carson never provided A.E. with the written notice set forth in SCR 20:1.15(b)(4m).

¶29 By March of 2011, A.E. began to consider initiating the divorce proceedings and met with Attorney Carson for legal advice. She paid Attorney Carson an additional $200, which Attorney Carson deposited into his office business account. On March 17, 2011, A.E. wrote to Attorney Carson saying she still had not decided when to file for divorce. On March 31, 2011, A.E. sent Attorney Carson a certified letter informing him that she and her husband were reconciling and that she would not need Attorney Carson's services. A.E. requested a refund of the $700 advanced fee she paid in July of 2010. Attorney Carson did not respond to A.E.'s refund request.

¶30 On June 3, 2011, A.E. sent Attorney Carson a second certified letter indicating that the letter was her final request for him to return her $700 advanced fee. Later in June, Attorney Carson informed A.E. that she was not entitled to a refund of any portion of her advanced fee.

¶31 A.E. filed a grievance with the OLR against Attorney Carson in August of 2011. Attorney Carson told an OLR intake investigator that the $700 constituted a flat fee. The intake investigator directed Attorney Carson to provide A.E. with the

11

SCR 20:1.15(b)(4m) written notice regarding fee accounting and dispute resolution upon termination of representation. Attorney Carson prepared a letter titled "Termination of Services Letter and Accounting of Fees" addressed to A.E., which indicated that it was to be sent to her at the email address shown on the letter. Attorney Carson sent the letter to that email address, but the address contained a typographical error and consequently was not received by A.E.

¶32 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Carson's representation of A.E.:

> [COUNT SIX] By receiving a $700 advanced fee from [A.E.] on or about July 26, 2010, in anticipation of possible representation in a divorce and depositing those funds into his business account without utilizing the alternative fee placement measures permitted under SCR 20:1.15(b)(4m), Carson violated SCR 20:1.15(b)(4).[6]
>
> [COUNT SEVEN] Having received a March 31, 2011, letter from [A.E.] in which she terminated the legal representation and inquired as to the possibility of having her advanced fee returned to her, by failing until June 2011 (and only after subsequent inquires from [A.E.]) to address the matter of the advanced fee either by refunding a portion of the advance or by promptly informing [A.E.] that no refund was

---

[6] SCR 20:1.15(b)(4) provides that "[e]xcept as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred."

forthcoming in light of work performed, Carson violated SCR 20:1.16(d).[7]

[COUNT EIGHT] In September 2011, by sending a "termination of services letter and accounting of fees" to [A.E.] (at an incorrect email address) that incorrectly stated that a refund of an advanced fee was possible only in hourly fee cases, and only sending his letter more than five months after [A.E.'s] termination of the legal representation in a belated effort to comply with the alternative fee placement measures permitting deposit of an advanced fee into a business account, Carson violated SCR 20:1.15(b)(4m)b.[8]

---

[7] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[8] SCR 20:1.15(b)(4m)b. provides:

Upon termination of the representation, the lawyer shall deliver to the client in writing all of the following:

1. a final accounting, or an accounting from the date of the lawyer's most recent statement to the end of the representation, regarding the client's advanced fee payment with a refund of any unearned advanced fees;

2. notice that, if the client disputes the amount of the fee and wants that dispute to be submitted to binding arbitration, the client must provide written notice of the dispute to the lawyer within 30 days of the mailing of the accounting; and

(continued)

¶33 In the stipulation, Attorney Carson represents that he fully understands the misconduct allegations, fully understands the ramifications should the court impose the stipulated level of discipline, fully understands his right to contest the matter, and fully understands his right to counsel. The stipulation also avers that Attorney Carson's entry into the stipulation was made knowing, voluntarily, and without coercion by any person or agency, and that his entry into the stipulation represents his admission of all misconduct recited and his assent to the level and type of discipline sought by the OLR director.

¶34 Upon careful consideration of this matter, we approve the stipulation and adopt the stipulated facts and legal conclusions of professional misconduct. We further find that a 90-day suspension of Attorney Carson's license to practice law in Wisconsin is an appropriate sanction for his misconduct. Because Attorney Carson entered into a comprehensive stipulation under SCR 22.12, thereby obviating the need for the appointment of a referee and a full disciplinary proceeding, we do not impose any costs in this matter.

---

3. notice that, if the lawyer is unable to resolve the dispute to the satisfaction of the client within 30 days after receiving notice of the dispute from the client, the lawyer shall submit the dispute to binding arbitration.

14

¶35 IT IS ORDERED that the license of Christopher S. Carson to practice law in Wisconsin is suspended for a period of 90 days, effective April 9, 2015.

¶36 IT IS FURTHER ORDERED that Christopher S. Carson shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶37 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).